Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD BLASCO, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC., BRIAN P. KELLEY, and FRANCES G. RATHKE,<br><br>Defendants. | Case No: 3:15-cv-02766<br><br>**[CORRECTED] CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Edward Blasco ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Keurig Green Mountain, Inc. ("Keurig" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired Keurig securities between February 4, 2015 and May 14, 2015, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its officers and/or directors.

2. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendants' projections for sales were unrealistic and unattainable given the continuing consumer confusion over the Company's Keurig 2.0 brewing system; (2) the retail distribution of Company's new cold brewing system, Keurig Kold, would be delayed; and (3) as a result, Defendants' statements about Keurig's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

3. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

4. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

5. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

6. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) because Keurig conducts business and has an office in this District.

[CORRECTED] CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

7.  In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

8.  Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Keurig securities at artificially inflated prices during the Class Period and has been damaged thereby.

9.  Defendant Keurig is a Delaware corporation headquartered in Waterbury, Vermont with an office in Castroville, California. The Company's common stock is listed on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "GMCR"

10. Defendant Brian P. Kelley ("Kelley") has served as the Company's Chief Executive Officer throughout the class period.

11. Defendant Frances G. Rathke ("Rathke") has served as the Company's Chief Financial Officer throughout the class period.

12. Defendants Kelley and Rathke are sometimes collectively referred to herein as "Individual Defendants."

13. Defendants Keurig, Kelley and Rathke are referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

14. Keurig produces and sells specialty coffee, coffeemakers, teas, and other beverages in the United States and Canada.

15. The Company launched the Keurig 2.0 brewing sytem in August, 2014, which can make up to 30 ounces of coffee at once using a K-Cup that's about twice the size of its traditional coffee pods.

16. On February 4, 2015, Defendant Kelly indicated that there was confusion among consumers as to which brands of coffee the Keurig 2.0 could brew during the Company's Q1 2015

[CORRECTED] CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Earnings Conference Call, which impacted the Company's financial performance. Defendant Kelley stated in part:

> Quite simply our 2.0 launch got off to a slower start than we planned due to a few important factors. First our efforts to get new packs transitioned on the retail shelves and in the homes did not move quickly enough. There was also confusion among consumers as to whether the 2.0 would still brew all of their favorite brands.
>
> These issues impacted consumer perception of the 2.0 and led to lower than expected brewer ratings early on. While consumer confusion has begun to subside and ratings have improved the effect weighed on brewer sales during the key holiday season.

17. Keurig Kold is the Company's new cold beverage drink system, which has yet to launch.

## Materially False and Misleading Statements

18. The Class Period begins on February 4, 2015, when the Company issued a press release announcing its financial results for the fiscal first quarter of 2015. It provided the Company's outlook for the second quarter of 2015, stating in part:

> Second Quarter 2015
>
> - ***Net sales growth in the mid-single digits over the second quarter of fiscal year 2014***
> - An effective tax rate of approximately 36% to 37%
> - Non-GAAP EPS in a range of $1.00 to $1.05 which:
>   - Includes an approximate $0.08 dilutive impact of the fiscal 2014 Coca-Cola and Lavazza Equity Transactions
>   - Includes an estimated $0.07 headwind from foreign currency exchange
>   - Excludes any additional actions the Company may take to offset dilution during the quarter
>   - Excludes the amortization of identifiable intangibles related to the Company's acquisitions and legal and accounting expenses related to the Company's pending securities and stockholder derivative class action litigation and antitrust litigation

(Emphasis added).

19. On that same day, the Company held its Q1 2015 Earnings Conference Call. During the call, Defendant Kelley stated the following with regards to the launch of Keurig Kold:

- 4 -

[CORRECTED] CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Now let me move on to one of our most important objectives for 2015 which is the introduction of Keurig [K]old to North American consumers. ***Our plans are progressing well and we're on track launch this fall.***

(Emphasis added).

20. On May 6, 2015, the Company held its Q2 2015 Earnings Conference Call. During the call, Defendant Kelley stated the following with regards to the launch of Keurig Kold:

***Combined with our forthcoming cold system launch which is on track for the fall of 2015***, we expect to be the leading player in the growing trend to offer premium beverage systems at home.

(Emphasis added).

21. The statements contained in ¶¶ 18-20 were materially false and/or misleading when made because defendants failed to disclose or indicate that: (1) Defendants' projections for sales were unrealistic and unattainable given the continuing consumer confusion over the Company's Keurig 2.0 brewing system; (2) the retail distribution of Company's new cold brewing system, Keurig Kold, would be delayed; and (3) as a result, Defendants' statements about Keurig's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

## The Truth Emerges

22. On May 6, 2015, the Company issued a press release aftermarket announcing its financial results for the fiscal second quarter of 2015. The press release revealed that the Company's sales growth for the quarter fell below its previously stated expectations, stating in part:

**Keurig Green Mountain Reports Fiscal Second Quarter 2015 Results**

- Non-GAAP EPS[1] of $1.03 and GAAP EPS of $0.97
- *Net sales growth of 2%*; 3% excluding foreign currency
- Updated fiscal year 2015 outlook includes revenue growth of flat to low-single digits, non-GAAP EPS decline of mid-single-digits and free cash flow of $120-$170 million
- Repurchased $837 million of common shares in the quarter
- Board of Directors declared $0.2875 quarterly dividend

WATERBURY, Vt.--(BUSINESS WIRE)-- Keurig Green Mountain, Inc. (NASDAQ: GMCR), a leader in specialty coffee, coffee makers, teas and other beverages with its innovative brewing technology, today announced its business results for the 13 weeks ended March 28, 2015.

"We are pleased to report that our earnings per share in the second quarter were in line with our guidance. ***Our top-line growth, however, was below our expectations primarily due to the slower than expected transition to the Keurig 2.0 system.*** We are taking actions to reduce brewer inventories, enhance our 2.0 brewer packaging to better communicate our extensive brand variety and step up innovation on our owned brands," said President and CEO, Brian Kelley.

(Emphasis added).

23.     On that same day, the Company held its Q2 2015 Earnings Conference Call. During the call, Defendant Kelley stated the following with regards to the Company's disappointing sales results:

With any new product introduction they are always challenges that are front end loaded and our transition to 2.0 was particularly complex. ***Point of sale results were not as strong as anticipated which led to higher levels of brew inventory of retail and on our balance sheet.***

***Some of this was due to consumer confusion around pod compatibility which we've mentioned in the past.*** Although we are seeing improvement as we transition more formally unlicensed brands into our manufacturing system.

(Emphasis added).

24.     On that same day, *Bloomberg Business* published an article concerning the slow sales of Keurig 2.0 brewing system for the quarter. The article quotes Defendant Kelley and states in part:

***Sales volume for the company's brewers declined 22 percent last quarter, underscoring the slow adoption of the new Keurig 2.0***, which lets people brew a carafe of coffee at a time. Brewer inventory also is stacking up at retailers, Keurig said. Separately, the company named a new chief financial officer, Peter Leemputte, who will replace Fran Rathke in August.

Keurig had said in February that the Keurig 2.0 rollout was off to a slow start. Though customers were thought to be eager for a larger brewer, many were confused

about what pods they could use in the new machines. Keurig's original system popularized Kcup singleserve canisters, leading a variety of brands to offer coffees and teas in the format.

*"These issues with 2.0 are a bit of a continuation of what we went through in the first quarter,"* Chief Executive Officer Brian Kelley said in an interview. *"There was consumer confusion, and while less, we still have some consumers who don't believe it brews all the brands that it does."*

(Emphasis added).

25. On this adverse news, shares of Keurig fell $9.92 per share or over 9% to close at $98.16 per share on May 7, 2015, damaging investors.

26. On May 14, 2015, the Company held a webcast aftermarket concerning Keurig Kold. During the webcast, Defendant Kelley revealed Keurig Kold will be sold online and in certain stores starting this fall, but won't be available in all its retail outlets until next year.

27. On this adverse news, shares of Keurig fell $8.82 per share or over 8% to close at $94.26 per share on May 15, 2015, damaging investors.

## **CLASS ACTION ALLEGATIONS**

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Keurig securities traded on NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

29. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Keurig securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Keurig or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Keurig;
- whether the Individual Defendants caused Keurig to issue false and misleading statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading statements;
- whether the prices of Keurig securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

34. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Keurig securities are traded in efficient markets;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on NASDAQ, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold Keurig securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

35. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### **NO SAFE HARBOR**

37. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Keurig who knew that the statement was false when made.

## FIRST CLAIM

**Violation of Section 10(b) Of
The Exchange Act Against and Rule 10b-5
Promulgated Thereunder Against All Defendants**

38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase Keurig's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

40. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the pur¬chasers of the Company's common stock in an effort to maintain artificially high market prices for Keurig's securities in violation of Section 10(b) of the Exchange

Act and Rule 10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

41. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Keurig as specified herein.

42. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Keurig value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Keurig and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Keurig securities during the Class Period.

43. Each of the Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents of the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

[CORRECTED] CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

44. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly.

45. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Keurig's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Keurig's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclose in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Keurig securities during the Class Period at artificially high prices and were or will be damaged thereby.

46. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Keurig financial results, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Keurig securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

47. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

48. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

49. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**SECOND CLAIM**

**Violation of Section 20(a) Of**
**The Exchange Act Against Individual Defendants**

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. Individual Defendants are sued herein as a controlling person of Keurig.

52. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness and/or intimate knowledge of the misleading statements disseminated to the investing public, these defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the primary violator, including the content and dissemination of the various statements that plaintiff contends are false and misleading. In particular, each defendant had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53. As set forth above, Keurig violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

54. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

55. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

[CORRECTED] CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1  C.  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

    D.  Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 19, 2015                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

[CORRECTED] CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS