**CERA LLP**
Solomon B. Cera (State Bar No. 99467)
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
Email: scera@cerallp.com

*Attorneys for Proposed Lead Plaintiff*
[Additional counsel on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD BLASCO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC., BRIAN P. KELLEY and FRANCES G. RATHKE,<br><br>Defendants. | Case No. 3:15-cv-02766-VC<br><br>**ARKANSAS PUBLIC EMPLOYEES' RETIREMENT SYSTEM'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHLUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>Date: September 24, 2015<br>Time: 10:00 a.m.<br>Courtroom: 4<br>Judge: Hon. Vince Chhabria<br><br>ORAL ARGUMENT REQUESTED |

(Caption continued on following page.)

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHLUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2040266.2

| 1 | KAMLESH PATEL, Individually | Case No. 3:15-cv-03715-WHO |
|---|---|---|
| 2 | and on Behalf of All Others Similarly Situated, | |
| 3 | Plaintiff, | |
| 4 | v. | |
| 5 | KEURIG GREEN MOUNTAIN, INC., BRIAN P. KELLEY and | |
| 6 | FRANCES G. RATHKE, | |
| 7 | Defendants. | |

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHLUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2040266.2

**TABLE OF CONTENTS**

Page(s)

1  I.    INTRODUCTION ..................................................................................................1

2  II.   BACKGROUND ....................................................................................................2

3  III.  ARGUMENT .........................................................................................................3

4       A.    Lee Is An Inappropriate Lead Plaintiff ...............................................3

5       B.    Wilder Is Also An Inappropriate Lead Plaintiff .................................8

6       C.    Appointing the Lee, Schlussel, and Wilder Group Will Harm the Class ..........10

7       D.    There is No Evidence that the Lee, Schlussel, and Wilder Group Comply
              with the PSLRA .................................................................................10

8  IV.   CONCLUSION ....................................................................................................13

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION
OF JESSICA LEE, ALAN SCHLUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS
LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO
                                                                                        i

2040266.2

# TABLE OF AUTHORITIES

CASES

Applestein v. Medivation Inc,
   No. 10-cv- 00998, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)............................................9

Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.,
   No. 07-cv-07097, 2009 WL 8572340 (C.D. Cal. Mar. 19, 2009)............................................9

Bruce v. Suntech Power Holdings Co.,
   No. 12-cv-04061, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) ..........................................11

Calvert v. Red Robin Int'l, Inc.,
   No 11-cv-03026, 2012 WL 1668980 (N.D. Cal. May 11, 2012)..........................................4, 6

In re Cavanaugh,
   306 F.3d 726 (9th Cir. 2002) ...............................................................................................12

Cohen v. Beneficial Indus. Loan Corp.,
   337 U.S. 541 (1949)................................................................................................................3

In re Critical Path, Inc.,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) .............................................................................9, 10

In re Diamond Foods, Inc., Sec. Litig.,
   281 F.R.D. 405 (N.D. Cal. 2012)............................................................................................6

Eichenholtz v. Verifone Holdings, Inc.,
   No. 07-cv-06140, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ......................................9, 10

GAMCO Investors, Inc. v. Vivendi, S.A.,
   927 F. Supp. 2d 88 ................................................................................................................9

Hanon v. Dataproducts Corp.,
   976 F.2d 497 (9th Cir. 1992) .................................................................................................8

In re Harman Int'l Indus., Inc. Sec. Litig.,
   petition for rehearing en banc denied, 791 F.3d 90 (D.C. Cir. 2015) ....................................13

Harris v. Vector Mktg. Corp.,
   753 F. Supp. 996 (N.D. Cal. 2010) ........................................................................................4

Jordan v. Paul Fin., LLC,
   285 F.R.D. 435 (N.D. Cal. 2012)...........................................................................................4

Khunt v. Alibaba Grp. Holding Ltd.,
   No. 15-cv-00759, 2015 WL 1954134 (S.D.N.Y. May 1, 2015) ...........................................11

Kline v. Wolf,
   88 F.R.D. 696 (S.D.N.Y. 1981) aff'd, 702 F.2d 400 (2d Cir. 1983) ........................................9

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION
OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS
LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO                    ii

2040266.2

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*McCracken v. Edwards Lifesciences Corp.*,
   No. 13-cv-1463, 2014 U.S. Dist. LEXIS 2147 (C.D. Cal. Jan. 8, 2014) ................................10

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
   No. 13-cv-05368, 2014 WL 2604991 (N.D. Cal. June 10, 2014)............................................11

*In re Netflix, Inc., Sec. Litig.*,
   No. 12-cv-0225, 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012)....................................6, 7, 10

*Panzirer v. Wolf*,
   663 F.2d 365 (2d Cir. 1981)...................................................................................................6

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) ...............................................................................................7

*In re Safeguard Scientifics*,
   216 F.R.D. 577 (E.D. Pa. 2003)............................................................................................9

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................................6

*In re Terayon Coms. Sys., Inc.*,
   2004 WL 413277 (N.D. Cal. Feb. 23, 2004) .........................................................................9

*Topping v. Deloitte Touche Tohmatsu CPA et al.*,
   No. 14-cv-2814, 2015 WL 1427317 (S.D.N.Y. Mar. 27, 2015).............................................5

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)...................................................................................11

*In re Versata, Inc., Sec. Litig.*,
   No. 01-cv-1439, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) .........................................11

*Weintraub v. Texasgulf Inc.*,
   564 F. Supp. 1466 (S.D.N.Y. 1983).......................................................................................9

*Weisz v. Calpine Corp.*,
   No. 02-cv-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) .........................................11

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION     iii
OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS
LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2040266.2

# I.  INTRODUCTION

Of the parties who have moved for appointment as lead plaintiff, the Arkansas Public Employees' Retirement System ("APERS") is the movant with the largest financial interest who otherwise satisfies the requirements of Rule 23. APERS should thus be appointed as lead plaintiff, and APERS' counsel, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), as lead counsel.

The only other movant with an allegedly larger financial interest is almost certainly a group of three unrelated individuals: Jessica Lee ("Lee"), Alan Schlussel ("Schlussel"), and Lawrence E. Wilder ("Wilder") (collectively, the "Lee, Schlussel, and Wilder Group"). The Lee, Schussel, and Wilder Group are represented by two law firms, Glancy Prongay & Murray, LLP ("Glancy") and the Rosen Law Firm P.A ("Rosen"), who seek appointment as co-lead counsel. It is unclear and unexplained how these three plaintiffs and two law firms happened to find each other and work together to file their lead plaintiff motion.

The apparent size of the Lee, Schlussel, and Wilder Group's financial interest, however, exists solely because of a potentially manipulative, and virtually unexplained, last-minute expansion of the class period (on both ends), which conveniently sweeps in a loss of approximately $1.5 million to Lee for a purchase Lee made on May 15, 2015, and a loss to Schlussel of over $400,000 for purchases made in December 14 and January 2015—losses that did not exist under the class period as alleged by the complaint in *this* action filed on June 19, 2015.[1]

Regardless, even if the Court uses this longer, unexplained class period, and the Lee, Schlussel, and Wilder Group is deemed to have the largest financial interest, that group is neither

---

[1] The Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws of Jessica Lee ("Lee Certification") (Dkt. 34-2 at 2-3) indicates that Lee retained the Rosen firm. It is not clear which law firm Schlussel and Wilder retained but it appears to be the Glancy firm since, unlike the Lee Certification, their certifications do not contain the Rosen firm's name. *See* Sworn Certification of Plaintiff of Alan Schlussel ("Schlussel Certification") (Dkt. 34-2 at 4-5) and Sworn Certification of Plaintiff of Lawrence E. Wilder ("Wilder Certification") (Dkt. 34-2 at 6-9).

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

1

2040266.2

typical nor adequate, and cannot satisfy Rule 23, as its constituent members suffer from a slew of weaknesses and unique defenses not shared by APERS or by the class, weaknesses which render its members unfit to serve as class representatives individually, and which are only compounded by the fact that they seek to serve as a group.

Indeed, even putting aside their other infirmities, the nature and circumstances surrounding the Lee, Schlussel, and Wilder Group *qua* group run counter to the PSLRA, and militate strongly against their appointment as lead plaintiff.

As a result, APERS is the only movant that meets the requirements of the PSLRA. APERS' motion should be granted.

## II.    BACKGROUND

The instant action began on June 19, 2015 when the Rosen firm filed a complaint on behalf of plaintiff Edward Blasco ("Blasco Complaint") alleging a fraud relating to the Keurig 2.0 and Keurig Kold systems, with an alleged class period of February 4, 2015 to May 6, 2015. *See* Blasco Complaint ¶ 1-2. (The intended close of the class period may have been May 14, 2015, since that was the date indicated in the associated PSLRA notice.)

The substantive allegations in the Blasco Complaint were that Defendants misled investors because they "failed to disclose or indicate that: (1) Defendants' projections for sales were unrealistic and unattainable given the continuing consumer confusion over the Company's Keurig 2.0 brewing system," and that "(2) the retail distribution of [the] Company's new cold brewing system, Keurig Kold, would be delayed." *Id.* ¶ 21. The Blasco Complaint alleged that the false and misleading nature of these statements were revealed no later than May 14, 2015. *Id.* ¶¶ 22-24, 26.

Thereafter, pursuant to the PSLRA notice published in connection with the Blasco Complaint, APERS and other putative class members began exploring the possibility of moving for lead plaintiff status, with a deadline of August 18, 2015. Four days before the deadline, however, the Glancy firm filed a complaint on behalf of Kamlesh Patel ("Patel Complaint"),

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO          2

2040266.2

purporting to expand the class period to a period starting from November 19, 2014 and ending August 5, 2015, but without providing any meaningful explanation for that expansion.

On August 18, 2015, five movants requested lead plaintiff status: (1) APERS, (2) John Hui, (3) Edward Jazlowiecki, (4) the Asbestos Workers of Philadelphia Pension Fund, and (5) the Lee, Schlussel, and Wilder Group. Of these, the Lee, Schlussel, and Wilder Group appear to have the largest losses under the expanded class period of approximately $2.2 million, and APERS the second largest of approximately $570,000.

For the reasons set forth below, the Court should focus on the originally asserted class period of February 4, 2015 to May 14, 2015. Using that period, APERS appears to be the movant with the largest financial interest.[2] However, even if the Court determines that Lee, Schlussel, and Wilder Group have the largest financial interest, they do not otherwise satisfy Rule 23, and appointing them as lead plaintiff would inevitably harm the class. Because APERS poses no such risk to the class, and because APERS' loss is larger than the remaining movants, APERS' motion should be granted.

## III.    ARGUMENT

### A.    Lee Is An Inappropriate Lead Plaintiff

To be appointed lead plaintiff, Lee must show that she is an adequate class representative, and that her claims are typical of the class. Lee fails on both counts.

The Supreme Court has noted that a class representative "sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his *diligence, wisdom and integrity*." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949) (emphasis added). Thus, courts routinely consider issues relating to credibility in determining whether to appoint a

---

[2] Based on a preliminary analysis, it appears that using a February 4, 2015 to May 14, 2015 class period, APERS has approximately $446,000 in losses, easily surpassing the Lee, Schlussel, and Wilder Group, since Lee and Schlussel would have *no* losses, and since Wilder's losses would appear to be less than $32,000. APERS can undertake additional analysis and submit revised loss charts should the Court so request.

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

3

2040266.2

plaintiff as class representative. *E.g.*, *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 996, 1015 (N.D. Cal. 2010) ("The honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims."); *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 462 (N.D. Cal. 2012) (expressing concern about the honesty and credibility of potential class representatives); *see also Calvert v. Red Robin Int'l, Inc.*, No 11-cv-03026, 2012 WL 1668980 (N.D. Cal. May 11, 2012) (denying plaintiff's request to be named class representative due to evidence of lack of "diligence, wisdom, and integrity.").

Here, even at this early stage, Lee suffers from serious credibility problems, making her an inadequate candidate for lead plaintiff. The Lee, Schlussel, and Wilder Group moved for lead plaintiff status on August 18, 2015. Lee was apparently the first member to sign up. According to the certification filed by her counsel in connection with this motion, Lee signed her certification expressing a desire to be lead plaintiff on July 10, 2015. *See* Lee Certification (Dkt. 34-2 at 2-3). This is a bizarre certification that makes no sense. The *only* transaction Lee made was a $3.25 million purchase of 35,000 shares at $95/share on ***May 15***, ***2015***, the day ***_after_*** the fraud was revealed, according to the Blasco Complaint, and *outside the Blasco Complaint's class period.*

Specifically, Lee's signature appears on what seems to be an internet-based form document which "certifies" that Lee "reviewed the complaint and authorized its filing" and acquired 35,000 shares at $95/share "during the Class Period," and which simultaneously purported to "retain the Rosen Law Firm," with a "Date of signing" of "07/10/2015." *Id.* These attestations, however, are dubious on their face. What complaint could Lee possibly have "reviewed" and "authorized" the filing of on July 10? The only complaint filed by the Rosen firm, the Blasco Complaint, had been filed nearly a month earlier. And what "Class Period" could Lee possibly have been referring to? The Blasco Complaint's class period ended on May 6, 2015[3]—more than a week *before* Lee's lone transaction. Put simply, at the time of Lee's

---

[3] Even assuming an end date of May 14, 2015 was intended instead, Lee's enormous purchase still occurred *after* that date.

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO     4

2040266.2

certification, there was no "complaint" that she could have authorized the filing of, much less a putative class of she was a member.

Before these issues could be tested, however, on August 14, 2015—just four days before the lead plaintiff deadline—the Glancy firm filed a complaint, the Patel Complaint. Conveniently for Lee, the Patel Complaint purports to extend[4] the class period on both ends, for a class period beginning on November 19, 2014, and ending to August 5, 2015—thus sweeping in Lee's May 15, 2015 transaction.[5]

But even then, Lee's certification is inexplicable. Lee could not have known on July 10, 2015, when she executed her certification, that a firm other than the one she apparently retained would more than a month later file a complaint, in a separate action, that would expand the potential class period to include her May 15, 2015 purchase, based on an August 5 disclosure that *had not yet even occurred.* Her claim to have purchased within the "Class Period" is thus highly dubious even considered in light of the Patel Complaint, since it was made *before* the August 5 disclosure, and *before* there was even a putative class of which she could even theoretically have been a member.

---

[4] As mentioned above, the Patel Complaint provides virtually *no* explanation of the factual basis for this expansion.

[5] In fact, the expansion did not just benefit Lee, but the Lee, Schlussel, and Wilder Group as whole, by sweeping in **all** of Schlussel's transactions and the majority of Wilder's as well. Interestingly, the plaintiff who **least** needed an expanded class period was Patel—the named plaintiff—himself, whose transactions all occurred in the original class period, and therefore was *already* a class member under the Blasco Complaint.

Indeed, the last-minute filing of the Patel Complaint, followed four days later by a request for lead plaintiff status that hinges entirely on that complaint's expanded class period, itself raises questions. Notably, the Rosen firm has previously engaged in eleventh-hour manipulations designed to manufacture losses in connection with lead plaintiff battles. *See generally Topping v. Deloitte Touche Tohmatsu CPA et al.*, No. 14-cv-2814, 2015 WL 1427317 (S.D.N.Y. Mar. 27, 2015) (rejecting the Rosen firm's attempt to manufacture losses through a late-filed amendment to a complaint). Given that Rosen's client Lee (not to mention Wilder) would have no claim but for the Patel Complaint filed by the Glancy firm, and given that both firms requested lead plaintiff status on behalf of a group including Lee only four days later, it seems almost certain that this was a coordinated maneuver.

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

5

2040266.2

As is apparent, there are significant irregularities surrounding Lee's certification, raising questions about her credibility, diligence, and integrity. These irregularities expose the class to significant risk. *E.g., Calvert*, 2012 WL 1668980 (denying class representative status where there was evidence that the plaintiff lacked "diligence, wisdom, and integrity."); *see also Panzirer v. Wolf*, 663 F.2d 365, 368-69 (2d Cir. 1981) (affirming the district court's finding that plaintiff lacked credibility).

Furthermore, the *nature* of Lee's claim is highly problematic for the class, subjecting her to unique defenses and creating potential conflicts of interest that will be attacked by Defendants. These issues render Lee an inappropriate lead plaintiff. *E.g.*, 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (existence of "unique defenses" defeats presumption that the movant with the largest financial interest is the appropriate lead plaintiff); *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 409 (N.D. Cal. 2012) ("A test for adequacy is whether the class representative … 'ha[s] any conflicts of interest with other class members.'") (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *In re Netflix, Inc., Sec. Litig.*, No. 12-cv-0225, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (existence of colorable issue unique to the movant meant that the movant "would not satisfy the PSLRA's typicality requirement.").

First, the timing, enormity, and one-off nature of Lee's investment subject her to unique lines of attack, focused on how she could even possibly have been defrauded. During the relevant time period, Lee made a single purchase of over $3 million worth of Defendants' stock, *after* the alleged fraud relating to customer confusion about the Keurig 2.0 and the delay of the Keurig Kold had been revealed to the market. Lee, then, cannot credibly claim that she did not know these facts. Rather, her purchase was clearly an enormous bet that, despite these setbacks, GMCR's stock price, which had been falling for months, and which had fallen further on the revelation that the Keurig Kold would be delayed, had finally bottomed out, and would start to rise. In other words, it was a bet that the worst was over, made with what Defendants will claim was full knowledge about the problems plaguing the Keurig 2.0 and Keurig Kold. In light of these facts, Defendants will surely pursue an unremitting attack on Lee's basis for that gamble.

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO    6

2040266.2

At each stage of the litigation, Defendants will defy Lee to explain why she made that bet, and how she possibly could have been defrauded in making it. Defendants will hone in on this point during written and document discovery, during her deposition, in motions practice, during class certification, at trial, and on appeal, and Lee and her counsel will be forced to fend off these attacks at every turn. It will be a significant weakness and downward driver during any settlement negotiations. Importantly, however, neither the class as a whole, nor the other movants, share this particular weakness.

Lee's claim is also uniquely vulnerable to attacks aimed at narrowing the class period, and eliminating the August 5 disclosure.[6] Indeed, of all the movants, *only* Lee's claim rises and falls *in its entirety* on proving the notion that the fraud continued even after Lee's May 15, 2015 purchase. Thus, it can reasonably be expected that Lee's priority will be proving that the fraud was not fully revealed until *after* her purchase, and will expend inordinate resources on so proving, because only then would she have a claim. The putative class, however, has significantly broader interests, which would be harmed by a litigation strategy narrowly focused on preventing Lee's claim from being dismissed.

It is important to note that in selecting an appropriate lead plaintiff, the purpose of considering issues bearing on typicality, adequacy, and unique defenses is not to adjudicate the merits of those issues, but to assess whether there is a likelihood that those issues will require litigation that does not apply to the class as a whole, and will thus subject the class to needless and costly litigation. *E.g., In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (the party

---

[6] For example, Lee's claim will be particularly susceptible to a truth-on-the-market argument by Defendants, pursuant to which Defendants will seek to escape liability by showing that the truth about the Keurig 2.0 and Keurig Kold was fully known to the market before Lee's purchase, having been disclosed on May 14, 2015. *See Provenz v. Miller*, 102 F.3d 1478, 1492 (9th Cir. 1996) ("Under this doctrine, a defendant can escape liability for a false statement—or one that reveals less than the full truth—by showing that the market was not affected by the misrepresentation because the truth of the matter was known already and had been factored into market prices."). It will also be susceptible to an argument by Defendants that there was no actionable misstatement or omission about which the August 5 disclosure could have revealed any truth in the first place, that the August 5 disclosure was therefore not corrective, and that losses associated with it therefore not recoverable.

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

7

2040266.2

opposing a movant for lead plaintiff need "only to show a degree of likelihood that a unique defense might play a significant role at trial," since the purpose of the requirement that the lead plaintiff not be subject to unique defenses "is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.") (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Against this standard, given the inevitability of distracting litigation devoted to fending off Defendants' attacks on Lee's unique weaknesses, and the concomitant diversion of resources away from prosecuting the class' affirmative case, there can be no question that Lee is an inappropriate class representative. Put simply, appointing Lee would expose the class to needless risk and expense. Lee, and any group Lee is a part of, should not be appointed to serve as lead plaintiff.

### B.    Wilder Is Also An Inappropriate Lead Plaintiff

Wilder is also an inappropriate lead plaintiff with unique issues not shared by the class. As an initial matter, a review of Wilder's transactions shows that during the original class period, Wilder appears to have sold his entire investment in Keurig several times, and that the vast majority of his transactions and losses are attributable to purchases made *after* May 15, 2015, *i.e.*, after the Blasco Complaint alleged the fraud had already been revealed. *See* Wilder Certification (Dkt. 34-2 at 7-9) (showing trading history). Thus, it appears that, like Lee, Wilder *also* made an enormous series of bet that the market had bottomed following the May 14, 2015 disclosure. Thus, he suffers from the same weaknesses that Lee does with respect to these purchases.

Moreover, Wilder's transactions reveal that he has a unique trading strategy unlikely to be shared by the class and likely to be attacked by Defendants. For example, Wilder routinely bought put options and sold call options, which are transactions that represent bets that Keurig's stock was *overpriced* and would *decline*. Also, Wilder's transactions include numerous purchases and sales within a short time period—including purchases and sales on the same day—

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

8

2040266.2

raising the distinct possibility that Wilder was a day-trader, *i.e.*, a trader who "'focuses on technical price movements rather than price,' … [and who may be] subject to a defense the [he] would have purchased the stock at issue 'regardless of the misstatement/omission.'" *Applestein v. Medivation Inc*, No. 10-cv- 00998, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (citing *In re Safeguard Scientifics*, 216 F.R.D. 577, 583 (E.D. Pa. 2003) and *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-cv-06140, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008).

These unique aspects of Wilder's trading history will inevitably invite attacks by Defendants relating to Wilder's trading strategy. Indeed, such attacks are common in securities class actions. *See, e.g., Eichenholtz*, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008) (deeming investor with unique trading strategy inappropriate class representatives); *In re Critical Path, Inc.*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001) (same); *In re Terayon Coms. Sys., Inc.*, 2004 WL 413277, at *7-8 (N.D. Cal. Feb. 23, 2004) (same); *Weintraub v. Texasgulf Inc.*, 564 F. Supp. 1466, 1471 (S.D.N.Y. 1983) (same); *Kline v. Wolf*, 88 F.R.D. 696, 699 (S.D.N.Y. 1981) aff'd, 702 F.2d 400 (2d Cir. 1983) (same); *see also GAMCO Investors, Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, (entering judgment for defendants following trial based on evidence relating to the class representative's unique trading strategy); *see also Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*, No. 07-cv-07097, 2009 WL 8572340, at *7 (C.D. Cal. Mar. 19, 2009) (noting where the plaintiff has "unique trading strategies[,] [c]lass representation may be quite difficult.").

It is important to note that whether Defendants will succeed on a unique trading strategy argument is, at this stage, somewhat besides the point. Rather, what matters is that Defendants will almost certainly *make* the argument, and Wilder and his counsel will be forced to defend against it, incurring costs that will be charged to the class as a whole, but which are of little, if any, benefit to it. *E.g., Applestein*, 2010 WL 3749406, at *3  (denying lead plaintiff status to movant based on arguments that the movant was a day-trader, even though the evidence was "insufficient to establish that [movant] was a day-trader *qua* day-trader," because the evidence was sufficient to "raise serious concerns" about the movant's "susceptibility" to that argument.)

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

9

2040266.2

### C. Appointing the Lee, Schlussel, and Wilder Group Will Harm the Class

As is apparent, Lee and Wilder individually fail to meet the PSLRA's requirements. Making matters worse is that they seek to serve as lead plaintiffs *together*, compounding the problem. Thus, the Lee, Schlussel, and Wilder Group will have to litigate a litany of issues unique to the group that do not apply to the class as a whole—to say nothing of the risk of lawyer-driven litigation that inheres in such a grouping of individual investors with no previous relationship, discussed further below. Thus, a lead plaintiff comprised of the Lee, Schlussel, and Wilder Group will inevitably disserve the class.

### D. There is No Evidence that the Lee, Schlussel, and Wilder Group Comply with the PSLRA

Even putting aside the significant shortcomings detailed above, the Lee, Wilder, and Schlussel Group *qua* group is not an appropriate lead plaintiff under the PSLRA. When considering whether to appoint a group of investors as lead plaintiffs, courts, including courts in this circuit and district, generally look for characteristics that reduce the risk of lawyer-driven litigation, since that was the primary purpose of the PSLRA. *E.g.*, *Eichenholtz*, 2008 WL 3925289, at *8 (noting that considering "the basis of the group formation" is important because "appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation.").

For example, courts examine whether the group has a pre-existing, pre-litigation relationship, preferring groups that do to groups of unrelated individuals cobbled together by attorneys. *E.g. In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1111 (N.D. Cal. 2001) (existence of pre-litigation relationship was of "paramount" importance); *In re Netflix, Inc. Sec. Litig.*, 2012 WL 1496171, at *4 (noting that "courts in this circuit uniformly refuse to aggregate losses of individual investors with no apparent connection with each other aside from their counsel").

Courts also consider whether the group includes institutional investors, as opposed to individual investors. *E.g., McCracken v. Edwards Lifesciences Corp.*, No. 13-cv-1463, 2014 U.S. Dist. LEXIS 2147, at *12 (C.D. Cal. Jan. 8, 2014) (noting favorably that "[e]ach member of the

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

10

2040266.2

[group] … is a sophisticated retirement fund with hundreds of millions in assets under management"); *In re Versata, Inc., Sec. Litig.,* No. 01-cv-1439, 2001 WL 34012374, at *7 (N.D. Cal. Aug. 20, 2001) (noting favorably that the "group also includes an institutional investor—a prototypical lead plaintiff."); *see also Weisz v. Calpine Corp.*, No. 02-cv-1200, 2002 WL 32818827, at *5 (N.D. Cal. Aug. 19, 2002) (noting that "institutional lead plaintiffs are preferred.").

Courts also examine declarations or affidavits submitted by group members for evidence of a group's ability to effectively supervise the attorneys and make collective decisions about the litigation, including evidence that the group members selected their lawyers, and not the other way around, and evidence of a decision-making apparatus for resolving intragroup conflicts, etc. *E.g.*, *In re Versata* (considering declarations submitted by group members in approving group as lead plaintiff); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-cv-05368, 2014 WL 2604991, at *5 (N.D. Cal. June 10, 2014) (same); *Bruce v. Suntech Power Holdings Co.*, No. 12-cv-04061, 2012 WL 5927985, at *3 (N.D. Cal. Nov. 13, 2012) (same); *McCracken*, 2014 U.S. Dist. LEXIS 2147, at *12–17 (same).

Outside of this circuit, courts consider essentially the same issues in assessing the appropriateness of appointing a group as a lead plaintiff. For example, courts in the Southern District of New York recognize as relevant factors:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (rejecting group that failed to meet these factors); *see also Khunt v. Alibaba Grp. Holding Ltd.*, No. 15-cv-00759, 2015 WL 1954134, at *7 (S.D.N.Y. May 1, 2015) (citing favorably the *Varghese* factors, and rejecting group that failed to meet them).

Here, the Lee, Schlussel, and Wilder Group lack any of the characteristics courts in this district and elsewhere generally look for. They do not have any apparent pre-litigation relationship. None are institutional investors. And the Group has not submitted any evidence of

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

11

2040266.2

their ability to supervise proposed co-lead counsel. Indeed, virtually *nothing* is known about *who Lee, Schlussel, and Wilder even are*.

To be sure, courts have from time to time approved groups that lack certain of the above characteristics, and counsel for the Lee, Schlussel, and Wilder Group will undoubtedly point the Court to cases approving groups of individual, as opposed to institutional, investors, as well as groups lacking a pre-existing relationship. However, APERS and its counsel have not been able to find *any* case approving a group that: 1) lacks a pre-litigation relationship and is so evidently a lawyer-driven creation (and whose seemingly large losses are almost certainly the result of lawyer-driven manipulation), 2) lacks institutional investors, and 3) has not submitted any evidence, declaration, or affidavit attesting to the members' ability to effectively supervise the lawyers and the litigation,[7] much less a group that suffers all the foregoing weaknesses ***and*** is further compromised by unique defenses and other individualized legal risks that will inevitably harm the class.[8] The Court should therefore decline to appoint the Lee, Schlussel, and Wilder Group as lead plaintiff, particularly since their appointment is opposed by a single institutional investor who possesses no such risks and who *does* comply with Rule 23, and who has substantial experience achieving positive results on behalf of classes of defrauded investors.[9]

---

[7] Indeed, it would be extremely telling if the Lee, Schlussel, and Wilder group submits a declaration either now or in reply (as they are expected to do), when they failed to do so in connection with their motion for lead plaintiff, as it raises the irresistible inference that the group members did not know each other and were not able to coordinate a declaration until *after* their motion was filed.

[8] The issues plaguing the Lee, Schlussel, and Wilder Group provide a "reasonable basis for a finding that [the group] is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv). Therefore, while the evidence is sufficient to reject that group now, should the Court have any hesitation in doing so, APERS is at the very least entitled to discovery on these issues to learn, among other things, how and when the group members came together, and how and when the Glancy and Rosen firms started to communicate about filing together with their clients. *See id.*

[9] APERS of course is not inviting the Court to engage in an impermissible "freewheeling comparison of the parties competing for lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). Rather, APERS seeks to assure the Court that, should the Court find that APERS has demonstrated that the Lee, Schlussel, and Wilder Group is an inappropriate candidate for lead plaintiff despite having what appears to be the largest financial stake, there can be no real controversy as to APERS' ability to satisfy the PSLRA, as evidenced by, among other things,

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

12

2040266.2

# IV.    CONCLUSION

For all the foregoing reasons, APERS respectfully requests that the Court grant APERS'
Motion for Appointment as Lead Plaintiff, and deny the Lee, Schlussel, and Wilder Group's
motion.

---

APERS' proven experience litigating securities class actions vigorously and successfully. *See,
e.g.*, *In re Harman Int'l Indus., Inc. Sec. Litig.*, *petition for rehearing en banc denied*, 791 F.3d
90 (D.C. Cir. 2015) (finding in favor of a class represented by APERS and reversing the district
court on a securities law question regarding the PSLRA's safe harbor provision after more than
seven years of litigation); *see also Arkansas Pub. Employee Ret. Sys. v. GT Solar Int'l, Inc.*, No.
08-cv-312, 2009 WL 3255225 (D.N.H. Oct. 7, 2009) (denying motion to dismiss in case in
which APERS was lead plaintiff); *see also Braun et al. v. GT Solar International, Inc. et al.*, No.
08-cv-312, Dkt. 142 (D.N.H. Oct. 31, 2011) (Transcript of Settlement Fairness Hearing before
the Honorable Joseph N. Laplante, dated September 27, 2011) (approving settlement after
finding that APERS had "fairly and adequately represented the interests of the class.").

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION
OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS
LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

13

2040266.2

Dated: September 1, 2015

Respectfully submitted,

**CERA LLP**

By: /s/Solomon B. Cera
Solomon B. Cera
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: 415-777-2230
Facsimile: 415-777-5189
Email: scera@cerallp.com

*Liaison Counsel for Proposed Lead Plaintiff*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (*pro hac vice* forthcoming)
Daniel S. Sommers (*pro hac vice* forthcoming)
1100 New York Avenue NW
Suite 500
Washington, D.C. 20005
Telephone: 202-408-4600
Facsimile: 202-408-4699
Email: stoll@cohenmilstein.com
       dsommers@cohenmilstein.com

Daniel B. Rehns
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: 212-838-7797
Facsimile: 212-838-7745
Email: drehns@cohenmilstein.com

*Attorneys for Proposed Lead Plaintiff APERS*

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION
OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS
LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2040266.2

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on September 1, 2015, I caused the foregoing to be electronically

3 filed with the Clerk of the Court using the CM/ECF system which will send notification of such

4 filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that

5 I caused the foregoing document or paper to be mailed via the United States Postal Service to the

6 non-CM/ECF participants indicated on the Manual Notice List.

7                                      /s Solomon B. Cera
                                       Solomon B. Cera
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES' RET. SYS. IN OPPOSITION TO MOTION
OF JESSICA LEE, ALAN SCHUSSEL AND LAWRENCE E. WILDER FOR APPOINTMENT AS
LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2040266.2

# Mailing Information for a Case 3:15-cv-02766-VC Blasco v. Keurig Green Mountain, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Solomon B. Cera**
  scera@cerallp.com,keg@cerallp.com,jrl@cerallp.com,lakessler@cerallp.com

- **Ronald Scott Kravitz**
  rkravitz@kravitzesq.com,rkravitz@sfmslaw.com,pleadings@sfmslaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Daniel S. Sommers**
  dsommers@cohenmilstein.com,efilings@cohenmilstein.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
(No manual recipients)
```