1   CERA LLP
    Solomon B. Cera (State Bar No. 99467)
2   595 Market Street, Suite 2300
    San Francisco, California 94105
3   Telephone: (415) 777-2230
    Facsimile: (415) 777-5189
4   Email: scera@cerallp.com
5
    *Attorneys for Proposed Lead Plaintiff*
6   [Additional counsel on signature page.]
7
8                   UNITED STATES DISTRICT COURT
9                 NORTHERN DISTRICT OF CALIFORNIA

10  EDWARD BLASCO, Individually          Case No. 3:15-cv-02766-VC
    and on Behalf of All Others
11  Similarly Situated,
                                         **ARKANSAS PUBLIC EMPLOYEES**
12                        Plaintiff,     **RETIREMENT SYSTEM'S REPLY**
                                         **MEMORANDUM OF LAW IN**
13  v.                                   **SUPPORT OF ITS MOTION FOR**
                                         **APPOINTMENT AS LEAD PLAINTIFF**
14  KEURIG GREEN MOUNTAIN,
    INC., BRIAN P. KELLEY and            Date:        September 24, 2015
15  FRANCES G. RATHKE,                   Time:        10:00 a.m.
                                         Courtroom:   4
16                        Defendants.    Judge:       Hon. Vince Chhabria
17
18                                       ORAL ARGUMENT REQUESTED
19  (Caption continued on following page.)
20
21
22
23
24
25
26
27
28

REPLY MEMO OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

| | |
|---|---|
| 1 | KAMLESH PATEL, Individually and on Behalf of All Others Similarly Situated, |
| 2 | |
| 3 | Plaintiff, |
| 4 | v. |
| 5 | KEURIG GREEN MOUNTAIN, INC., BRIAN P. KELLEY and FRANCES G. RATHKE, |
| 6 | |
| 7 | Defendants. |

Case No. 3:15-cv-03715-WHO

REPLY MEMO OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ................................................................. 1

II.    ARGUMENT ...................................................................... 3

       A.     In Determining which Movant Has the Largest Financial Interest, the Court Should Use the Initially Noticed Class Period, and Appoint APERS as Lead Plaintiff ................................................................. 3

              1.     The Lee, Schlussel, and Wilder Group Continues to Measure Its Losses Using an Improper Class Period ................................... 3

              2.     Under the Initially Noticed Class Period, APERS Has the Largest Financial Interest, and Undisputedly Satisfies Rule 23 and the PSLRA ........................................................................ 7

              3.     The Court Should Not Order Republication ............................ 8

       B.     APERS Should be Appointed Lead Plaintiff Even under the Expanded Class Period Because the Lee, Schlussel, and Wilder Group is Subject to Unique Defenses ............................................................. 10

       C.     APERS Should Be Appointed Lead Plaintiff Even under the Expanded Class Period Because the Lee, Schlussel, and Wilder Group Fail to Satisfy the PSLRA ........................................................................ 12

III.   CONCLUSION ................................................................... 14

REPLY MEMO OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION     i
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andrada v. Atherogenics, Inc.*,
No. 05-cv-61, 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) ....................................12

*Applestein v. Medivation Inc.*,
No. 10-cv-998, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010).............................12

*In re Bally Total Fitness Sec. Litig.*,
No. 04-cv-3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ...............................10

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ..............................................................5, 6

*Bhojwani v. Pistiolis*,
No. 06-cv-13761, 2007 WL 2197836 (S.D.N.Y. July 31, 2007)...........................5, 6

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010) ........................................................3

*In re Cent. European Distrib. Corp. Sec. Litig.*,
No. 11-cv-6247, 2012 WL 5465799 (D.N.J. Nov. 8, 2012) ...............................14

*In re Centerline Holding Co. Sec. Litig.*,
No. 08-cv-1026, 2008 WL 1959799 (S.D.N.Y. May 5, 2008) .........................3, 4, 5

*Eichenholtz v. Verifone Holdings, Inc.*,
No. 07-cv-6140, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ......................5, 6, 7

*Friedman v. Quest Energy Partners LP*,
261 F.R.D. 607 (W.D. Okla. 2009)...........................................................14

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
No. 07-cv-2245, 2008 WL 3895478 (S.D. Cal. May 22, 2008) ...........................5, 6

*In re IMAX Sec. Litig.*,
No. 06-cv-6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009) ...........................10

*Lax v. First Merchants Acceptance Corp.*,
No. 97-cv-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ......................5, 6, 8, 9

*Lien v. Verifone Holdings, Inc.*,
No. 07-cv-6195 (N.D. Cal. December 6, 2007).............................................6

*Miller v. Ventro Corp.*,
No. 01-cv-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ........................5, 6

*Mulligan v. Impax Labs.*,
No. 13-cv-1037, 2013 WL 3354420 (N.D. Cal. July 2, 2013) ...........................5, 6

REPLY MEMO OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

ii

2042257.2

## TABLE OF AUTHORITIES

**Page(s)**

*In re Network Assocs., Inc., Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...................................................................................12

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009) .........................................................................................3

*In re Party City Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999)...................................................................................................5

*In re Select Comfort Corp. Sec. Litig.*,
   No. 99-cv-884, 2000 WL 36097395 (D. Minn. May 12, 2000) ..............................................8

*Steamfitters Local 449 Pension Fund v. Cen. European Distrib. Corp.*,
   No. 11-cv-6247, 2012 WL 3638629 (D.N.J. Aug. 22, 2012)................................................10

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   No. 05-cv-1898, 2005 WL 1322721 (S.D.N.Y. June 1, 2005) ..............................................9

*Thomas v. Magnachip Semiconductor Corp.*,
   No. 14-cv-01160, 2015 WL 3749784 (N.D. Cal. June 15, 2015)........................................8, 9

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   629 F. Supp. 2d 1233 (D.N.M. 2009) ...................................................................................8

*Turner v. ShengdaTech, Inc.*,
   Nos. 11-cv-1918, 11-cv-1996, 11-cv-2064, 11-cv-3325, 2011 WL 6110438
   (S.D.N.Y. Dec. 6, 2011).....................................................................................................8, 9

*Westend Capital Mgmt. LLC v. Verifone Holdings, Inc.*,
   No. 07-cv-6237, (N.D. Cal. December 10, 2007)...................................................................6

*Weikel v. Tower Semiconductor Ltd.*,
   183 F.R.D. 377 (D.N.J. 1998)..............................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY MEMO OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO     iii

2042257.2

Arkansas Public Employees Retirement System ("APERS") submits this memorandum in further response to the motions of other movants seeking appointment as lead plaintiff. As set forth in its prior filings, APERS is the movant[1] with the largest financial interest that otherwise satisfies Rule 23. Accordingly, its motion should be granted. Importantly, nothing submitted to-date by the Lee, Schlussel and Wilder Group supports a different conclusion. In fact, that group's submissions underscore that its asserted losses are the product of an improper, last-minute attempt to alter the asserted class period in order to enhance its losses so as to maximize its chances of being appointed lead plaintiff. Further, nothing in its submissions cures the fact that each of its members will be subject to unique defenses as to their adequacy and the typicality of their claims. Finally, the Lee, Schlussel and Wilder Group itself is a lawyer-manufactured group that fails to meet the standards of the PSLRA. Indeed, that group's joint declaration which was plainly designed to belatedly address this defect simply amplifies the fatal problem.

## I.     INTRODUCTION

While the Lee, Schlussel, and Wilder Group appear to be the movants with the largest financial interest, if the expanded class period is used, that is only the beginning of the PSLRA inquiry. Indeed, the PSLRA includes additional safeguards precisely because it recognizes that having the largest financial interest is, by itself, insufficient to ensure the movant is qualified to represent the class.

As APERS has demonstrated, that is precisely the case here. Indeed, there are multiple, independent reasons that the Lee, Schlussel, and Wilder Group should not be appointed lead plaintiff.

---

[1] Of the five initial movants for lead plaintiff, one (Edward Jazlowiecki) has withdrawn his motion (*see* Dkt. 38), and one (John Hui) has filed a statement of non-opposition (*see* Dkt. 44). The three other movants are APERS, Asbestos Workers Philadelphia Pension Fund ("AWPPF"), and Jessica Lee ("Lee"), Alan Schlussel ("Schlussel"), and Lawrence E. Wilder ("Wilder") as a group (the "Lee, Schlussel, and Wilder Group").

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO          1

2042257.2

1    First, the Lee, Schlussel, and Wilder Group's financial interest is based on an improper

2    expansion of the class period.[2] As a result,  the Lee, Schlussel, and Wilder Group is not entitled

3    the presumption conferred by having the largest financial interest because the Court should use

4    the "original noticed class period" of February 4, 2015 to May 14, 2015 in determining the

5    movant with the largest financial interest. AWPPF Response at 2. Using the proper class period,

6    APERS is indisputably the movant with the largest financial, and is therefore the presumptive

7    lead plaintiff. And, because APERS' ability to satisfy Rule 23 is undisputed, APERS should be

8    appointed lead plaintiff.

9    Second, even if the expanded class period is used, the Lee, Schlussel, and Wilder Group

10   cannot serve as lead plaintiff because all its constituent members are subject to unique defenses,

11   and their appointment would inevitably result in distracting litigation. Thus, the Group cannot

12   serve as lead plaintiff for failure to satisfy Rule 23, even if it is deemed to have the largest

13   financial interest. Notably, no such arguments have been made about APERS.

14   Third, the Lee, Schlussel, and Wilder Group cannot serve as lead plaintiff because it is

15   an improper, lawyer-driven amalgamation of unrelated individuals with no pre-existing

16   relationship. Courts have regularly concluded that such "groups" cannot fulfill the PSLRA's

17   purpose of ensuring securities class actions are headed up by lead plaintiffs who can effectively

18   direct and supervise the litigation and their lawyers, and of preventing lawyer-driven litigation.

19   Thus, regardless of the class period used, the Lee, Schlussel, and Wilder Group should

20   not be appointed as lead plaintiff.[3]

21

22   _____

23   [2] AWPPF raises this argument and agrees with APERS. *See* Response to Competing Motions for Appointment as Lead Plaintiff ("AWPPF Response") (Dkt. 42) at 2.

24   [3] In its submission, AWPPF suggests that the Court could consider the option of ordering

25   republication of the PSLRA notice for the expanded class period. *See* AWPPF Response at 2. APERS submits that republication is inappropriate here. The PSLRA is meant to ensure prompt

26   selection of the lead plaintiff. Thus, where the actions are related, as they are here, the PSLRA explicitly requires publication by the plaintiff in the first-filed action only. *See* 15 U.S.C. § 78u-

27   4(a)(3)(A)(ii).

28

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION        2
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

## II.      ARGUMENT

**A.      In Determining which Movant Has the Largest Financial Interest, the Court Should Use the Initially Noticed Class Period, and Appoint APERS as Lead Plaintiff**

**1.      The Lee, Schlussel, and Wilder Group Continues to Measure Its Losses Using an Improper Class Period**

The Lee, Schlussel and Wilder Group has offered no principled reason why the Court should evaluate the motions based upon its own self-serving, last-minute decision to expand the class period. Instead, the Court should use the noticed class period of February 4, 2015 to May 14, 2015 to calculate which movant has the largest financial interest, and decline to use the Patel Complaint's expanded class period.[4] The Patel Complaint was filed at the last minute, expands the class period in what appears to be an attempt to manufacture losses, and does so without alleging facts that support that expansion.[5]

*In re Centerline Holding Co. Securities Litigation* is analogous to the situation here. There, the first complaint, which alleged a class period of March 12, 2007 to December 28,

---

[4] While courts often adopt the longest class period among related complaints, courts are by no means *bound* to do so. *See, e.g.*, *In re Centerline Holding Co. Sec. Litig.*, No. 08-cv-1026, 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) (adopting shorter period since the complaint alleging the longer period lacked allegations supporting the longer period); *see also In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010) ("There is a risk … to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest."); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) ("[S]imply adopting the most inclusive class period might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination.")

[5] Counsel for APERS is aware that the Court recently used a longer class period in *Union Asset Management Holding AG, et al v. SanDisk Corporation, et al.*, No. 15-cv-01455, Dkt. 69 (N.D. Cal. July 9, 2015) (minute entry for proceedings regarding, among other things, appointment of lead plaintiff). APERS respectfully submits, however, that the Court has an important function in assuring that a proper class period is used, and that the facts in this case counsel against using the Patel Complaint's class period, because as described herein, the Patel Complaint's class period is not supported by factual allegations and appears to be an obvious tactic designed merely to generate the largest financial interest. However, as further argued below, even if the Court decides to use the expanded class period here, the Lee, Schlussel, and Wilder Group suffers from uniqueness, atypicality, and inadequacy problems, and moreover is not a proper group, which are independent reasons the group is disqualified from being appointed lead plaintiff, and which compel the result that APERS should so appointed.

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION          3
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

2007, was filed on January 18, 2008, setting a lead plaintiff deadline of March 18, 2008. On February 26, 2008, however, a related complaint was filed expanding the class period to begin on December 5, 2006. Attorneys for the plaintiff that filed that complaint then moved for lead plaintiff status on behalf of a group of investors, the Burns Group, which claimed the largest financial interest based on the expanded class period. Competing movants, however, argued that the expansion was "made in bad faith to ensure that the Burns Group would have the largest loss." *Centerline*, 2008 WL 1959799, at *3. Thus, they argued the initial class period should be used to calculate the movant with the largest financial interest.

The court agreed. Specifically, it found that the subsequent complaint "fail[ed] to allege any facts whatsoever that would support an inference that [the December 5, 2006] statements were false when made." *Id.* Thus, the court declined to use the expanded class period, and found that the movant whose losses depended on it was not the movant with the largest financial interest.[6] *Id.* at *4.

Here, the Patel Complaint was filed even closer in time to the lead plaintiff deadline than in *Centerline*. And, like the subsequent complaint in *Centerline*, the Patel Complaint fails to "allege any facts whatsoever that would support" expanding the class period to August 5, 2015.

Indeed, the only portions of the Patel Complaint that even mention the August 5 disclosure are paragraphs 7-8, and a section captioned "Disclosures at the End of the Class Period." Patel Complaint at 10. However, paragraphs 7-8 merely state that "the Company disclosed declines in net sales for the third quarter of 2015 and reduced its sales outlook for the remainder of 2015," and that Keurig share prices fell as a result. As for the section captioned "Disclosures at the End of the Class Period," it merely reproduces, verbatim, portions of a press release.

---

[6] The court was careful to point out that it was not "mak[ing] any determination about the merits of the claims," and noted that a class period beginning "earlier than March 12, 2007" was possible. *Centerline*, 2008 WL 1959799, at *4.

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

4

2042257.2

1    As in *Centerline*, however, missing are "**any facts** whatsoever that would support" the

2    expansion of the class period (as opposed to conclusory allegations). As in *Centerline*, this raises

3    the specter that the expansion "was made in bad faith to ensure that the [Lee, Schlussel, and

4    Wilder Group] would have the largest loss." *Id.* at 3. Indeed, but for the last-minute expansion,

5    neither Lee nor Schlussel would have *any* loss, and Wilder only about $32,000.

6    Thus, the Court should decline to use the expanded class period to determine which

7    movant has the largest financial interest.[7]

8    In support of the longer class period, the Lee, Schlussel, and Wilder Group cite *Mulligan*

9    *v. Impax Labs.*, No. 13-cv-1037, 2013 WL 3354420, at *8 (N.D. Cal. July 2, 2013), *Eichenholtz*

10   *v. Verifone Holdings, Inc.*, No. 07-cv-6140, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008),

11   *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 269 (S.D.N.Y. 2009),

12   *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.,* No. 07-cv-2245, 2008 WL 3895478, at *1

13   n.2 (S.D. Cal. May 22, 2008), *In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999),

14   *Lax v. First Merchants Acceptance Corp.*, No. 97-cv-2715, 1997 WL 461036, at *5 (N.D. Ill.

15   Aug. 11, 1997), *Miller v. Ventro Corp.*, No. 01-cv-1287, 2001 WL 34497752, at *4-5 (N.D. Cal.

16   Nov. 28, 2001), and *Bhojwani v. Pistiolis*, No. 06-cv-13761, 2007 WL 2197836, at *3 (S.D.N.Y.

17   July 31, 2007).

18   None of these cases, however, help the Lee, Schlussel, and Wilder Group's cause, and all

19   are easily distinguishable. As an initial matter, in all but two of these cases, the competing

20   movants did not even *contest* the use of the longer class period, giving these cases little, if any,

21   precedential or persuasive value. *See, e.g., Mulligan* (no contest of the use of longer class

22   period); *In re Bank of Am. Corp.* (same); *HCL Partners* (same); *In re Party City* (same); *Miller*

23   (same); *Bhojwani* (same). And in *Lax*, the competing movant did not argue that the shorter class

24   period should be used in calculating which movant had the largest financial interest, but instead

25

26   [7] However, as in *Centerline*, the Court need not make a determination of the merits of the

27   expanded class period.

28

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION       5
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

relied on the argument that the PSLRA's notice requirements had not been met. *See Lax*, 1997 WL 461036, at *3; *see also id.* at *5 n.8.

Further, in all but one of these cases, the complaint alleging the longer class period was filed well before the lead plaintiff deadline, and was sometimes the *first-filed complaint itself.* *See, e.g., Mulligan*, 2013 WL 3354420, at *2 (noting that the complaint alleging the longer class period was filed April 8, 2013, which was well before the lead plaintiff deadline of May 7, 2013); *Eichenholtz*, 2008 WL 3925289, at *2 (noting the longest class period were alleged in the "*Lien* and *Westend* complaints," which were filed on December 6, 2007, and December 10, 2007, respectively [*see Lien v. Verifone Holdings, Inc.*, No. 07-cv-6195, Dkt. No. 1 (N.D. Cal. December 6, 2007) *and Westend Capital Mgmt. LLC v. Verifone Holdings, Inc.*, No. 07-cv-6237, Dkt. No. 1 (N.D. Cal. December 10, 2007)], well before the lead plaintiff deadline of February 4, 2008); *HCL Partners*, 2008 WL 3895478, at * 1 n.2, *cf. HCL Partners Ltd. P'ship v. Leap Wireless,* No. 07-cv-2245, Dkt No. 1, (S.D. Cal. Nov. 27, 2007) (longest class period alleged in the complaint filed on November 27, 2007, which was apparently the first-filed complaint, and well before the lead plaintiff deadline of January 28, 2008); *Miller*, 2001 WL 34497752, at *1 n.3, *cf. id.* at *1 n.1 (longest class period was alleged in the first-filed complaint on March 30, 2001, and well before the lead plaintiff deadline of May 29, 2001); *Bhojwani*, 2007 WL 2197836, at *3 (noting that the longer class period was alleged in a "notice, published shortly []after" the first-filed complaint); *see also generally In re Bank of Am. Corp.*, 258 F.R.D. 260 (no indication the longest class period was alleged in a last-minute complaint). *Lax* was the only case where the complaint alleging the longest class period was filed shortly before the lead plaintiff deadline, but as mentioned above, the competing movant relied on the argument that the PSLRA's notice requirements had not been met, and did not argue that the shorter class period should be used to determine which movant had the largest financial interest. *See Lax*, 1997 WL 461036, at *3; *see also id.* at *5 n.8.

Indeed, the *only* case in which it was argued that the longer period should not be used for the purposes of calculating which movant had the largest financial interest was *Eichenholtz*.

*Eichenholtz*, however, is easily distinguished. First, as noted above, there, the complaints alleging the longer class period were filed well before the lead plaintiff deadline. Here, the Patel Complaint was filed just four days before the lead plaintiff deadline. Second, the complaints alleging the longer class period alleged substantially more facts supporting that longer period than the Patel Complaint here. Indeed, the court in *Eichenholtz* explicitly noted that the expansion encompassed events which the "court [was] certain" had resulted in potentially misleading statements being made. *Eichenholtz*, 2008 WL 3925289, at *3. Here, as noted above, the Patel Complaint contains little to no factual support for the expanded class period, and no such "certainty" that the expansion sweeps in actionable misstatements and disclosures exists. Thus, *Eichenholtz* does not support using the longer class period here.

Accordingly, the Court should decline to use the Patel Complaint's expanded class period, and should use the initially noticed class period to calculate which movant has the largest financial interest.

### 2. Under the Initially Noticed Class Period, APERS Has the Largest Financial Interest, and Undisputedly Satisfies Rule 23 and the PSLRA

Under the initially noticed class period, APERS' losses are approximately $446,773. *See* Declaration of Dan S. Sommers ("Sommers Decl."), Exhibit 1 (APERS' loss chart for initially noticed class period). No other movant has a larger financial interest,[8] and thus APERS is the presumptive lead plaintiff.

APERS also satisfies Rule 23 and the PSLRA, and indeed, no competing movants have argued otherwise. APERS is a single, institutional investor, with substantial experience serving as lead plaintiff in securities class actions. Its adequacy has not and cannot be challenged.

---

[8] Lee and Schlussel have *no losses*, and Wilder's losses under this class period are approximately $32,000. *See* Sommers Decl., Exhibit 2 (Wilder's loss chart for initially noticed class period). AWPPF's losses are approximately $63,000. *See id.*, Exhibit 3 (AWPPF's loss chart for initially noticed class period). Jazlowiecki's are approximately $9,000. *See id.*, Exhibit 4 (Jaczlowiecki loss chart for initially noticed class period). Hui did not purchase any stock during this period, and only sold a single put contract, which he covered for a loss through a purchase on June 19, 2015. *See* Exhibit B to Declaration of Ronald S. Kravitz (John Hui loss chart) (Dkt. 17-2).

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO
7

2042257.2

1  Further, its claims are based on routine purchases and sales of Keurig's common stock. The

2  typicality of these claims similarly has not and cannot be challenged. Thus, APERS should be

3  appointed lead plaintiff.

4          **3.**      **The Court Should Not Order Republication**

5          Only AWWPF suggests the possibility that the Court could consider ordering the

6  publication of a further notice. Such republications are rare and generally disfavored and the

7  Court should also not order republication of notice of the expanded class period in this case. The

8  PSLRA contemplates that in related class actions, lead plaintiff be selected as expeditiously as

9  possible. *See, e.g.*, *Lax*, 1997 WL 461036, at *4. Thus, it provides that even where there are

10  multiple related actions, "only the plaintiff or plaintiffs in the first filed action shall be required

11  to cause notice to be published." 15 U.S.C. § 78u–4(a)(3)(A)(ii). Accordingly, "[i]n general,

12  republication is not required where a complaint expands the class period." *Thomas v. Magnachip*

13  *Semiconductor Corp.*, No. 14-cv-01160, 2015 WL 3749784, at *4 (N.D. Cal. June 15, 2015)

14  (declining to order republication upon expansion of class period); *see also Turner v.*

15  *ShengdaTech, Inc.*, Nos. 11-cv-1918, 11-cv-1996, 11-cv-2064, 11-cv-3325, 2011 WL 6110438,

16  at *3 (S.D.N.Y. Dec. 6, 2011) (same); *In re Select Comfort Corp. Sec. Litig.*, No. 99-cv-884,

17  2000 WL 36097395, at *2 (D. Minn. May 12, 2000) (same); *In re Thornburg Mortg., Inc. Sec.*

18  *Litig.*, 629 F. Supp. 2d. 1233, 1242 (D.N.M. 2009) (same); *Lax*, 1997 WL 461036, at *4(same).

19          In *Turner*, the complaint expanding the class period was filed on the same day as the lead

20  plaintiff deadline. While the other movants did not contest the propriety of that expansion, or

21  argue that it should not be used to calculate which movant had the largest financial interest, one

22  movant did argue that the subsequent complaint "so expands the class period of the first-filed

23  case as to warrant a stay in this action for a second round of PSLRA notice." *Turner*, 2011 WL

24  6110438, at *2.

25          The court, however, declined. It noted that "[c]ourts … disfavor republication of notice

26  under PSLRA when a class period is extended." *Id.* at *3. It explained that "[t]his antagonism

27  derives from the text of the law, which specifies that where a later action asserts substantially the

28

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION   8
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

1  same claim as a first-filed action, 'only the plaintiff or plaintiffs in the first filed action shall be

2  required to cause notice to be published.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(A)(ii)).

3  The court then noted that the subsequent complaint "proceeds against the same

4  defendants as the first-filed Turner action, relies on the same legal theories as that action, and

5  concerns the same type of securities as that action." *Id.* at *3. Thus, it declined to order

6  republication, despite the fact that the class period had been nearly tripled by the subsequent

7  complaint on the day lead plaintiff motions were due. *See id.* at *2; *see also Lax*, 1997 WL

8  461036, at *4 (declining to order republication where the subsequent complaint expanding class

9  period was filed a few days before the lead plaintiff deadline, in part because, "[i]nstead of

10  ensuring that lead plaintiffs are appointed as quickly as possible after the filing of the first class

11  action complaint, enforcement of such a rule would mean that the lead plaintiff could not be

12  appointed until sixty days after the publication of the last notice related to that securities

13  litigation. In some cases, appointment of lead counsel could be delayed indefinitely if new

14  complaints alleging earlier starting dates for the class period were filed. Such a result would

15  clearly thwart the intent of the PSLRA, which was meant to have lead plaintiffs appointed as

16  soon as practicable.")

17  The Patel Complaint "proceeds against the same defendants as the first-filed [Blasco]

18  action." *Turner*, 2011 WL 6110438, at *3. And, although it adds allegations, it largely "relies on

19  the same legal theories as that action." *Id.* It also "concerns the same type of securities as that

20  action." *Id.; cf. Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-cv-

21  1898, 2005 WL 1322721, at *1 (S.D.N.Y. June 1, 2005) (ordering republication where six new

22  bond certificates were added by the subsequent complaint, when the original complaint alleged

23  only a single certificate). Moreover, no parties have moved to intervene on the basis of the

24  expanded class period, nor has a potentially more appropriate lead plaintiff under the expanded

25  class period been identified. *See Thomas*, 2015 WL 3749784, at *4 (declining to order

26  republication upon the filing of an amended complaint and a new action that had the combined

27

28

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION   9
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

1    effect of expanding the class period, adding new defendants, and adding new claims, and where

2    no potentially more appropriate lead plaintiff under the new complaint had been identified).

3        **B.    APERS Should be Appointed Lead Plaintiff Even under the Expanded Class
4             Period Because the Lee, Schlussel, and Wilder Group is Subject to Unique
              Defenses**

5        A separate and independent reason to deny the Lee, Schlussel, and Wilder Group's

6    motion is that each constituent member is subject to disqualifying unique defenses, as both

7    APERS and AWPFF have pointed out. Nothing in the Lee, Schlussel, and Wilder Group's brief

8    refutes these arguments.

9        It is anticipated that the Lee, Schlussel, and Wilder Group will argue in reply that the

10   unique defenses and issues raised should not disqualify them because they lack merit. But, as

11   APERS has already pointed out, whether Defendants will ultimately succeed on the merits is, at

12   this stage, irrelevant. What matters is that there is every likelihood that Defendants will make

13   these non-frivolous arguments. That is enough to disqualify the Lee, Schlussel, and Wilder

14   Group from serving as lead plaintiff. *See, e.g., In re Bally Total Fitness Sec. Litig.*, No. 04-cv-

15   3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) (rejecting movant subject to unique

16   defenses that "would distract [movant] from the claims of the rest of the class"); *In re IMAX Sec.*

17   *Litig.*, No. 06-cv-6128, 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) (rejecting movant

18   with unique issues because "it is ***possible*** that these issues ***could*** ultimately severely prejudice

19   the class, either at the class certification stage or on some subsequent appeal.") (emphasis

20   added).

21       In *Steamfitters Local 449 Pension Fund v. Central European Distribution Corp.* a

22   movant was denied lead plaintiff status because there was an argument that it lacked standing.

23   No. 11-cv-6247, 2012 WL 3638629, at *12 (D.N.J. Aug. 22, 2012). It was unclear, however,

24   whether the cases that suggested the movant lacked standing would even apply, however,

25   because they were not binding on the court. *Id.* at *13. Nevertheless, the court held that the

26   movant could not serve as lead plaintiff.

27

28

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION     10
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

1    The court expressed "sympathy" for the movant's argument that it was "unfair" to

2    disqualify it on the basis of "uncertain" law, but explained that "the objective here is to

3    determine which plaintiff will best serve the class' interests." *Id.* at *14. Noting that there was

4    "every likelihood that defenses unique to the [movant] will be raised, to the detriment of the

5    overall interests of the class," the court concluded that it "must not prejudice the class' interests

6    by subjecting the class to the time and expense of addressing ***arguably*** meritorious defenses

7    unique to the lead plaintiff." *Id.* (emphasis added). In other words, it was sufficient for a defense

8    to be *arguably* meritorious to be disqualifying simply because there was a "likelihood" that it

9    would "subject[] the class to [additional] time and expense." *Id.*

10    Here, there is also "every likelihood" that Defendants will attack a number of weaknesses

11    unique to each member of the Lee, Schlussel, and Wilder Group, none of which are addressed in

12    the Group's recent submission. These include:

13    • The numerous discrepancies in Lee's highly dubious certification, which

14    undermine her credibility and adequacy to serve as class representative;

15    • The basis for Lee's enormous bet that Keurig's stock had bottomed out following

16    the May 14, 2015 announcement, which is alleged to have revealed the fraud,

17    which goes to at least the reliance and loss causation elements of her claims, as

18    well as their typicality;

19    • Wilder's unique trading strategy, all of which call into question the typicality of

20    his claims, including:

21    ○ A series of enormous bets that Keurig's stock had bottomed out following

22    the May 14, 2015 announcement;

23    ○ Completely liquidating his position in Keurig during the initially noticed

24    class period several times over;

25    ○ The possibility that Wilder is a day trader or otherwise relied on a strategy

26    that does not depend on the integrity of the stock price;

27    ○ Numerous trades of put and call options;

28

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION   11
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

1    • Schlussel's trading in naked put options, and the typicality of his claims.[9]

2    Accordingly, the existence of unique defenses is an independent basis to deny the Lee,

3    Schlussel, and Wilder Group lead plaintiff status.

4    **C.    APERS Should Be Appointed Lead Plaintiff Even under the Expanded Class
         Period Because the Lee, Schlussel, and Wilder Group Fail to Satisfy the
5         PSLRA**

6    A third independent reason to deny the Lee, Schlussel, and Wilder Group's motion is it is

7    an improper, lawyer-created group of unrelated individual investors who lack any pre-litigation

8    relationship, and who will be hard pressed to effectively direct the litigation and supervise the

9    attorneys—an important purpose of the PSLRA. *See, e.g.*, *In re Network Assocs., Inc., Sec. Litig.*,

10   76 F. Supp. 2d 1017, 1023 (N.D. Cal. 1999) ("To allow lawyers to designate unrelated plaintiffs

11   as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the

12   litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than having the

13   lawyers seek the lead plaintiff."); H.R. CONF. REP. 104-369, 32, 1995 U.S.C.C.A.N. 730, 731

14   ("[The PSLRA] protects investors who join class actions against lawyer-driven lawsuits by

15   giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the

16   issuer.").

17   It was telling that the Lee, Schlussel, and Wilder Group failed to file any evidence that it

18   was not an improper group in connection with its lead plaintiff motion. That failure was clearly

19   indicative that the group was assembled by their lawyers at the last minute, that its members had

20   never met or spoken before, and thus had no pre-existing relationship or any connection

---

22   [9] As AWPFF pointed out, Schlussel's naked put options are susceptible to a unique defense. *See
     Applestein v. Medivation Inc.*, No. 10-998, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010)
23   ("[T]he nature of Slotkin's [naked put] options trading and the information he used to make
     investment decisions could become the focus of the litigation, distracting from the central issue:
24   did Medivation commit a fraud on the market? Accordingly, because Slotkin traded only in
     [naked put] options, the court holds that Slotkin should not be appointed lead counsel."); *see also
25   Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 391-92 (D.N.J. 1998) (rejecting the
     appointment of an options trader as class representative); *Andrada v. Atherogenics, Inc.*, No. 05-
26   61, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (finding options trader atypical and
     inadequate for lead plaintiff purposes, and noting absence of cases "in which an option holder
27   was deemed to be an appropriate lead plaintiff for an entire securities fraud class action.").

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION    12
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

1  whatsoever. As APERS noted in its brief opposing the Lee, Schlussel, and Wilder Group,

2  APERS anticipated the group would attempt to demonstrate some cohesiveness by subsequently

3  filing a declaration, *see* APERS' Memorandum of Law in Opposition to Motion of Jessica Lee,

4  Alan Schlussel and Lawrence E. Wilder for Appointment as Lead Plaintiff ("APERS Opp.")

5  (Dkt. 45) at 12 n.7, which is exactly what happened. However, that declaration raises more

6  questions than it answers, and indeed, even a cursory reading demonstrates that APERS was

7  correct in its assessment that the Lee, Schlussel, and Wilder Group is an improper, lawyer-

8  manufactured group cobbled together by attorneys in an attempt to win lead plaintiff status.

9  These tactics, however, fail to satisfy the PSLRA.

10       For example, the declaration states:

11       Prior to filing our Lead Plaintiff motion and after considering the merits of the
         case and the benefits of working together to pursue the litigation, including the
12       fact that we each invested in Keurig securities during the Class Period and can
         share the responsibilities of directing this case and jointly supervising counsel, we
13       determined to seek appointment as lead plaintiff jointly.

14  Joint Declaration of Jessica Lee, Alan Schlussel and Lawrence E. Wilder in Support of Motion to

15  Consolidate Related Actions, For Appointment as Lead Plaintiff and For Approval of Co-Lead

16  Counsel ("Joint Declaration") (Dkt. 47-2), ¶ 6.

17       While this language is clearly designed to create the impression of pre-litigation

18  coordination, it is more notable for what it does *not* state, which is that they actually had ***any*** pre-

19  litigation relationship. Indeed, it does not even state that Lee, Schlussel, or Wilder even knew

20  each other's names or identities before filing their motion, much less that they communicated

21  with each other prior to the filing of their motion. As for the oblique representation that "we

22  determined to seek appointment as lead plaintiff jointly," this could mean any number of things,

23  including that it was their *lawyers* contacted each of them and asked if they would agree to move

24  for lead plaintiff as a group. Indeed, the evasiveness of this language leads to the inescapable

25  conclusion that that is exactly what happened. Obviously, if there was any pre-litigation

26  relationship, the members of the Lee, Schlussel, and Wilder Group would have been willing and

27  able to say so under oath.

28

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO          13

2042257.2

1       Similarly telling is their representation that they "communicated collectively as a group

2 in a conference call to discuss our joint motion for consolidation, appointment as lead plaintiff

3 and approval of counsel." Joint Declaration ¶ 11. Again, this representation is most notable for

4 the fact that it does not say that they held that conference call *before* they filed their motion.

5 Again, the only reason for this notable omission is that that they did not speak directly with each

6 other until after that motion was filed.

7       As for the Joint Declaration's conclusory statements that Lee, Schlussel, and Wilder will

8 be able to work together effectively and are able to direct this litigation and supervise their

9 attorneys, *see* Joint Declaration ¶¶ 5, 6, 9, that proposition is severely undermined by that fact

10 that they were not even able to accomplish the simple task of filing a joint declaration until *after*

11 they moved for lead plaintiff.

12       In sum, the Lee, Schlussel, and Wilder Group is an improper, lawyer-manufactured group

13 of unrelated individuals, and this incontrovertible reality is an independent reason they cannot

14 serve as lead plaintiff under the PSLRA.[10] If the Court agrees, it need not consider any of the

15 other arguments presented.

16                 **III.**         **CONCLUSION**

17       For all the foregoing reasons, APERS respectfully requests that the Court grant APERS'

18 Motion for Appointment as Lead Plaintiff.

19 _____

20 [10] Nor should the Court appoint some subset of the Lee, Schlussel, and Wilder Group. First, as discussed above, each individual member is subject to unique defenses, and thus there is no

21 subset that could possibly satisfy the PSLRA and Rule 23. In addition, however, because they opted to move as a group, they should not be permitted to seek appointment on an individual

22 basis at this late stage. *See, e.g., Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 612 (W.D. Okla. 2009) (declining to appoint subset of a group after they so requested after the lead

23 plaintiff deadline).

24 Indeed, allowing one of the group's constituent members to move forward as lead plaintiff, even though that movant has not yet filed a motion for lead plaintiff, may *itself* subject that movant to

25 the unique defense that that movant did not timely move for lead plaintiff. *See Cent. European*, 2012 WL 3638629, at *12 (D.N.J. Aug. 22, 2012) (finding that sub-movants "are subject to a

26 unique defense regarding untimely filing."); motion for relief from judgment on other grounds granted sub nom. on *In re Cent. European Distrib. Corp. Sec. Litig.*, No. 11-6247, 2012 WL

27 5465799 (D.N.J. Nov. 8, 2012).

28

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION    14
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

| | |
|---|---|
| 1 | Dated: September 8, 2015 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |

Dated: September 8, 2015                    Respectfully submitted,

CERA LLP

By: /s/Solomon B. Cera
Solomon B. Cera
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: 415-777-2230
Facsimile: 415-777-5189
Email: scera@cerallp.com

*Liaison Counsel for Proposed Lead Plaintiff*

COHEN MILSTEIN SELLERS & TOLL PLLC
Steven J. Toll (*pro hac vice* forthcoming)
Daniel S. Sommers (*pro hac vice* forthcoming)
1100 New York Avenue NW
Suite 500
Washington, D.C. 20005
Telephone:  202-408-4600
Facsimile:  202-408-4699
Email: stoll@cohenmilstein.com
            dsommers@cohenmilstein.com

Daniel B. Rehns
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: 212-838-7797
Facsimile:  212-838-7745
Email:  drehns@cohenmilstein.com

*Attorneys for Proposed Lead Plaintiff APERS*

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

15

2042257.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

/s/Solomon B. Cera
Solomon B. Cera

MEMO OF LAW OF ARKANSAS PUBLIC EMPLOYEES RET. SYS. IN SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF—Case Nos. 3:15-cv-02766-VC; 3:15-cv-03715-WHO

2042257.2

# Mailing Information for a Case 3:15-cv-02766-VC Blasco v. Keurig Green Mountain, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Solomon B. Cera**
  scera@cerallp.com,keg@cerallp.com,jrl@cerallp.com,lakessler@cerallp.com

- **Ronald Scott Kravitz**
  rkravitz@kravitzesq.com,rkravitz@sfmslaw.com,pleadings@sfmslaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Daniel S. Sommers**
  dsommers@cohenmilstein.com,efilings@cohenmilstein.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
(No manual recipients)
```